17, 0392, Peoples Estate of Illinois, talent by Mark Osso v. David Nelson, athlete by Neal Patel. Mr. Osso. People argue that the trial judge erred in granting defendants' motion to quash, arrest, and suppress evidence. The trial judge made a key ruling that was against the manifest weight of the evidence and contrary to authority, where she found that the defendant was placed under arrest when he turned and presented himself for arrest. The officers then moved toward the defendant. Deputy Kirsch noted the defendant was speeding at about 3 a.m. He made a U-turn and activated his lights just after the defendant had hit his brakes when approaching a green light at an intersection. After that, defendant did not pull over for about seven seconds. He had traveled 300 to 400 feet to the entrance to a subdivision, and defendant could have stopped sooner since there was no traffic on his side of the four-lane street at that time of night. He drove over a fog line when he turned into the subdivision entrance. He stopped in a position so as to partially block two lanes. He admitted he had drunk two beers earlier. He had an odor of alcohol in his breath. His eyes were red. He believed it was 1 a.m. when it was actually 3 a.m. He failed an alphabet test. He refused field sobriety test, and his speech was slow. Deputy Kirsch and the second officer moved toward defendant only after defendant turned and put his hands behind his back and refused testing. Before either officer displayed his handcuffs or told defendant he was under arrest, defendant reconsidered and offered to take the test. The two officers backed away, and the defendant then failed sobriety test administered to him by Kirsch. Defendant refused a PBT, and he also refused a breathalyzer test, though it had not been mentioned. The people have not disputed the defendant was seized and he was not free to leave during the traffic stop, but defendant was not arrested until Kirsch handcuffed him and told him he was under arrest. Our Supreme Court in Ballard reiterated that there is no constitutional right to be arrested in officers who have no duty to halt an investigation when they have the minimum evidence needed to establish the cause. The fourth district in Gilbert noted that a reasonable person stopped for a traffic violation would not view himself as being under arrest, and this court in Tortorici found that a stop was converted into an arrest when the officer handcuffed the defendant, said that he was under arrest, and in Smith, this court said that the use of handcuffs is an indicator that a person is under arrest. A defendant relied on the Jackson factors in his brief and claims that they showed that the defendant was under arrest, but the Jackson court applied those factors to a reasonable person innocent of any crime, and that reasonable innocent person standard still applies. Unlike this defendant who clearly believed he was driving under the influence, Jackson had done nothing suspicious, and the officers had no reason to stop him. Jackson court found that the handcuffing and placing Jackson in a squad car were the factors that would have led Jackson to believe that he was not free to leave. A Delaware case that was quoted by Jackson relied on this court's decisions in Malpia and Tortorici, and Delaware found that handcuffing a person constitutes an arrest. Our Supreme Court in Ludeman reiterated that where a person has not been restrained, the appropriate inquiry is whether a reasonable person would feel free to decline the officer's requests or to otherwise terminate the encounter. And here. If he asked a couple of different times, he's like, hey, can I just walk home? Can I just go, I live right over there, can I just walk over there and go home? Absolutely, he wanted to drive home, he wanted to walk to his own home, walk to a friend's home. He repeatedly refused the sobriety testings, the PBTs, volunteered that he wouldn't take the paraphernalia, and these all show that he did not believe that he was under arrest at that time, that he was free to leave if the officer would simply agree to allow that. But they didn't, right? I mean, at the point, they, you know, he said, no, I'm gonna have you do these tests, or I, you know, something of that nature. I mean, so, clearly wasn't free to leave, right? Well, no, we're saying that he was seized, absolutely. We're not saying that, you know, that he wasn't seized at this time, or that he was absolutely free to go. No, we've admitted that. But he was not, despite that, he was not under arrest at this point. No, Your Honor, you're not. Free to go in this situation is a little different in that the officer was wanting to assure that the defendant was, in fact, not under the influence, that he could drive safely. And that was what he kept telling the young man all the time, is, you know, I just wanna make sure that you're okay to drive, and, you know, I just want you to take these tests. If you pass these tests, you're free to leave. They pulled him out of the car. Yeah, they did take him by the arm, but pulling, I think, Your Honor, is an overstatement of the actual facts. If you view the video, he did open the door, and he touched it. And, well, the trial judge found that it wasn't, but, you know, we can disagree about what's on the video, and I'm not saying that you were wrong. I'm just saying that... That you're right. Well, but the trial judge, and, you know, he had him loosely by the arm. I didn't see force. If you did, of course, you're the judge. And I'm not, so. I understand. Under the codename, is it a codename? It says that if a police officer retains the driver's license, the person's not free to go. Well, that would be true. He still had his license, even at the time of the ultimate arrest, yes. If he kept his driver's license, and he was not free to go? Well, he's just not free to go, but that doesn't, at that point, constitute an arrest. It's like in a traffic situation, where there's no indication whatsoever of the person having drunk any alcohol or such. You know, the officer does not suspect that at all in the situation. When they retain that license to go back to their vehicle, and write out the tickets and everything, that person's not under arrest, they're just seized at that time. Give them back, when it's all done, they give that license back. So the holding of the license, while it is still a part of the seizure, is not, in itself, does not constitute an arrest. It comes when you say you're under arrest, and you handcuff the person. Restrain them in some way, physically. That's what the cases that we cited in our briefs indicate. Regarding the field sobriety test, the trial judge's factual findings were also against the manifesto's evidence. The trial judge found that the defendant did a really good job on the alphabet test, even though he went further than he was supposed to. And the judge noted that the defendant did not sing the alphabet, and he recited it quickly. The defendant clearly restated the letter G between the letter I and the letter J. He continued past the letter Q, which is what he stopped on, and then he stopped reciting the alphabet on Y. The case law people cited on pages 30 to 31 of our main brief shows that the defendant failed the alphabet test. The failure on the test was evidence of intoxication, and that he was driving under the influence, and that reciting the alphabet quickly and not singing is not relevant. The trial judge also found that the defendant's balance was excellent. The video shows that the defendant walked unsteadily from his car. During the one-leg stand test, he had to place one hand on the ground to prevent himself from falling. And in the walk-and-turn test, the defendant stumbled off the imaginary line, going in both directions. And the people stand on a brief for all other argument. We ask this court to reverse the trial judge's grant of defendants' motion to quash and to suppress evidence and to remand for a trial on the merits of the DUI case. Let me ask you a question about the fact that the defendant found that he, or if we determine that he was grabbed and not so gently, and that he was pulled out of the car, is he arrested then under remand? That wouldn't necessarily constitute an arrest. It would be a factor that one would consider whether or not he was under arrest. But to say that one factor in and of itself constituted an arrest, I don't believe that would be accurate. Thank you. May it please the court and counsel. In listening to the state argue, as well as reviewing their brief, the fact of the matter is there's not really a big dispute as to what the law is in this situation. This was a traffic stop that developed into a DUI arrest. Many, many cases on point. Many, many cases that aren't on point. What law has been developed is essentially saying these are fact-specific circumstances that turn on the facts of the case. And so I think when we're looking at this case, one of the things that's very important to deal with first is in the underlying case, the trial judge made a determination that he was arrested at a particular point in time. And that particular point in time was when the defendant had turned around and the officer had approached him, his hand on his handcuff, or near his handcuff, or on his handcuff, and there was some gentle touching or an attempt to touch. The video may have blocked it a little bit. And that is the point in which Judge Goodman ruled that the defendant was placed under arrest. And so the reason why I want to bring this up is because this is an issue that's, that finding has to be against the manifest weight of the evidence in this case. And I would just submit that the state has not demonstrated that. When we take a look at this case, there was a seizure pursuant to a traffic stop. We weren't disputing that at the trial level. Approximately 10 minutes had passed between the time of the actual stop as well as when this event took place, which is between the 314 and 315 mark on the video in the upper left-hand corner. The video is very excellent evidence in this case. It's relatively clear. And I think that any issues of ambiguity can be resolved by just watching the video. It's very obvious that my client is not free to leave. I was actually the attorney that did the underlying hearing. Mr. Nelson did ask a number of times if he could go home and he wasn't allowed to leave. And we know that not just because of what Mr. Nelson asked and the statements that were made, but because of the show of authority, the use of lights. Not all traffic stops are arrests. But the issue is, is when does this traffic stop go from being a simple seizure to actually being an arrest? But then what happens is, is after the deputy leaves his vehicle, takes the documentation, comes back, then there's this encounter at the car. If we watch the video, we hear the defendant not exiting the vehicle at the officer's requests. The requests turn into commands. We can hear what sounds to be a phone ringing from the vehicle. Then the officer is the one who opens the door. The officer does use some force. I'm not going to say it was an excessive amount of force, but he did apply his hands upon the defendant, help him, or take him out of the car, and then walked with him at least several feet to the area where the balance of the encounter takes place. There are four officers on scene at this particular point. The lead officer never gets more than three or four feet away from my client. There's another officer somewhat to the left of the camera. His focus is on the interaction between Deputy Kirsch and my client. There are two other officers. One officer is intently focused on what's going on inside the car. The other officer is kind of standing by a tree and kind of like shifting back and forth. And one of the things that's very interesting is as this sort of encounter starts to progress and my client turns around and we start to fall into a kind of typical fact pattern that we see in some of these cases of refusing to cooperate, refusing to take tests, wanting to take this to the next step, that individual starts to move towards attention to get closer to Deputy Kirsch and actually focuses his attention away from the vehicle. He was up against a tree and now he or she, I can't tell, is on the curb. And we have Deputy Kirsch then making his approach with his hands on his cuffs, physical touching of the defendant. And at this point, even though it is not said, you're under arrest, if we just hit the pause button right there, we can see where it goes because my client then says, okay, well now I'll do it. And the reason why he says now I'll do it is because the part that isn't spoken is I'm gonna put the cuffs on you and place you under arrest. I do not think that this finding was against the manifest way to the evidence. When we start to consider the factors of Jackson, and I'll address the issue of the reasonably innocent person in a moment, with the exception of no use of formal indicia of arrest, meaning handcuffs or being placed in the squad car. All the other factors are present and weigh in favor of an arrest. This is a traffic stop. This is a seizure. He's not free to leave. There are four police officers there. The subjective intent of the defendant is very clear. He believes he's going to get arrested. When he puts his hands behind his back, that I think very clearly shows that. The intent of the officer is also quite clear too. Aside from the fact that Deputy Kirsch testified that he believed he had enough probable cause at that point to place my client under arrest, the approaching, the mannerisms in which he used, the attention that the other officers kind of step at indicate he's being about to be placed under arrest. Even though he was not told he was under arrest, he was never told he was free to leave. While there is a dispute as to what his understanding was of if he could leave, it was always qualified. He was first told he didn't feel, the officer didn't feel like he was safe to drive. He was told that he wouldn't be allowed to leave if he didn't take the test. I will concede that the officer did say that if you pass these tests, I'll let you go. None of those though amount to, if he did pass the test and the officer still arrested him, does that mean there wasn't probable cause? No, it's just a statement that a police officer can make. They are in fact allowed to lie. While the officer's language was mild, he did use authoritative commands. He did not ask the defendant to take tests. He said, now do this, put your feet together like this. Even at some point he says, man to man, come on, do these tests. We know exactly what the officer was trying to do here, which was trying to get the defendant to undertake these tests. And so I would argue to the court that at this point, he is placed under arrest and that finding is not against the manifest way to the evidence. One of the things that the state brought up was, there was a point where he took the one-legged stand that he kind of lost his balance and put his foot on the ground. The court very clearly said that this was after the point of arrest. And so as it relates to the issue of probable cause to arrest, it needs to be gauged at the time the arrest took place. So in this case, the court decided that the arrest took place at the 314 mark, not when he took this one-legged stand test. The final issue to consider is whether or not at the point of arrest was there probable cause to arrest. And again, many of the things that the court said were not against the manifest way to the evidence. The court specifically said she didn't find erratic driving. In this case, the traffic stop was based off of speed. Speeding has never been one of the classic indicators of an impaired driver. Bad driving is the hallmark of any DUI investigation. And even though it may have offered grounds for a stop, it has rarely if ever been considered for the purposes of intoxication. The issue about the fog line. Again, the officer did not note that in his report and did not claim to see it until he was watching the video live in court. And even with what we see on the video, the defendant's vehicle, the passenger side, I believe, rear tires, touched the fog line, did not cross over it, and is during the course of the turn into the residential subdivision. The state wants to make an issue of the delay or the length of time that it took the vehicle to stop. The court saw the video. Any expression of familiarity she has with the area, she may have said it. But more to the point, she did not find an issue with where he chose to stop his vehicle. That should be a finding that is given great deference by this court. And it's a very simple reason. It was a four lane highway. Even though it was late at night, it was still a highway. There was not a shoulder area, just a one foot wide area. When you turn into the residential area, you're gonna definitely block the ingress into the residential area. And he eventually pulled and stopped at the stop sign. He used his signal while turning, and there were no significant issues. I do disagree with the characterization that he blocked the intersection or that his vehicle was somehow improperly parked as part of the traffic stop. He did have to stop at some point, and he stopped in an appropriate place. He produces his documentation without any particular issue. His balance, aside from what may have taken place after the arrest, is very good. The judge calls it essentially perfect. She's not just weighing performance on field sobriety tests. She's placing what weight on those that she chooses to, which is her right. She is also watching this encounter, which takes many, many minutes outside of the car and does not make any negative finding as it relates to his balance. She's in court when he testifies, my client testifies. She's in court when she watches the video, and she does not note any issues with his speech. And so based on this, what she essentially has is we have an odor of alcohol, an admission, and we have some speeding. That's what she found to give weight in this particular case. And in this particular case, she said that it simply wasn't enough. One of the issues that the state brings up is the Jackson factors may not be applicable because it is based off of the standard of a reasonable person innocent of any crime, and the defendant himself sure is acting like a guilty person. Well, the court never made any particular findings to suggest that that's why he was acting in a particular way or not. He has a right to refuse field sobriety testing. He does not have to comply with the officer's requests. But beyond that, he stands accused of a crime. He's always innocent until proven guilty. So even if for some reason this court chooses not to consider the Jackson factors of the totality of the circumstances, even considering this argument under people versus ludiment, is he free to terminate the encounter? Of course he's not. And while Justice McDade, you'd ask the questions about the driver's license, or Your Honor had asked questions about the physical touching when he was removed from the vehicle, those things by themselves don't elevate it necessarily from a seizure to an arrest. They are absolutely factors to consider. I'm sure we can find case law that says when an individual is handcuffed or placed in a squat car, say when an officer arrives on the scene of a bar brawl, he's gonna say, I put him in handcuffs for officer safety. He wasn't under arrest at that point. And then a reasonable argument could exist is that he was not in fact under arrest at that point. It's more than just simply those specific issues. He is not free to terminate the encounter. And so even under ludiment, when we're at this position that we're at, this officer is about to arrest him. If my client didn't say anything at that point and ultimately didn't stop and say, fine, I'll take the tests, he would have been arrested. The handcuffs would have been put on him at that point. As it relates to the refusals to take breath tests, I think where the defendant himself may have said, I'm not taking any breath test. He was offered a portable breath test at the scene by the officer when he's in this hands behind your back phase before he's placed under arrest. I understand the state is trying to argue that his refusal to take a breath test is consciousness of guilt. It's a pretty strong, lengthy inference to make that he's talking about a chemical test at the station as opposed to what the officer specifically was offering, which was the portable breath test. And we discussed in our briefs that even in the statute, it says you can refuse to take the portable breath test. So I don't believe any negative inference should be drawn from that. Ultimately, I think this case kind of boils down to the long standing principle that the trial court is the finder of fact. And she made certain findings of fact, which were not against the manifest way of the evidence. But if there are any questions, I'll be happy to answer them. I thank you, Mr. Cattell. Thank you. Thank you. Talked about the officer had a hand on his arm and on his cuffs. That's unclear, but it appeared from the video that he at least had a hand reaching in his direction and may have had a hand on the cuffs. But that only shows an intent to arrest. That doesn't show a completed arrest. Doesn't equal arrest. The defendant believed he was going to be arrested. He presented himself for arrest. You know, here, arrest me, go ahead. All right? But this does not show that he was actually arrested. The officer himself dictates when the person is arrested, not the defendant. And the officer encouraged him to do the field sobriety testing. No test would be needed if he was already under arrest. The tests are only good for probable cause. The officer was offering those tests. If he passed those tests, drive home, goodbye. But if he failed the test, that's probable cause, then time for the arrest. And the people have not argued that speeding is an indicator of intoxication. That was the only reason. That was the reason for the stop in the first place, not for probable cause for DUI. So we're not arguing that at all. And one thing that people note is after he pulled into that subdivision where he eventually parked, he was partially blocking that circular drive and was partially blocking the cross street that came along. And the trial judge did not consider that partial blockage of both the lanes and didn't mention at all in her findings. Again, we ask this court to reverse on this. You have any other questions for me, your honors? Thank you. Thank you, Mr. Officer. Thank you both for your evidence. The evidence is matter on your advisement. Your base here was a written decision within a short day.